MEMORANDUM OF DECISION
This case presents petitions for the termination of the parental rights of Selina M. to her two children, Jayron B., now age seven and JaBraun M., who will be two on February 24, 1998. It also sought the termination of the rights of the biological fathers of the children, John B. and Richard J. The rights of both fathers were terminated by the order of the Superior Court for Juvenile Matters on January 29, 1997 ( Jones, J.). Jayron came into the care of the Department of Children and Families, hereafter the "Department", on July 1, 1995. He was removed from this mother due to her cocaine addiction and her transient lifestyle. Jayron was adjudicated neglected on September 15, 1995. His younger half-brother, JaBraun, was born on February 24, 1996 and, because of his mother's addiction and her continued at-risk behavior, was removed from the hospital and placed into foster care a few days after his birth. He was adjudicated neglected and committed to the care and custody of the Department on April 10, 1996. Both children remain in foster care with the foster mothers with whom they were originally placed. They are thriving. They enjoy sibling visits with each other and an older sister, who is also in foster care. Her mother's rights to this child were previously terminated. Each of the foster mothers wishes to adopt the child in her care.
The Department seeks this termination on the sole grounds that the children were abandoned by their mother and amended the petition to delete all other grounds on the day of trial. Connecticut General Statutes § 17a-112(c)(3)(A).
The court finds that the mother was duly served, has appeared and has a court-appointed attorney. Selina M. did not appear at trial, although her counsel was present. The court finds from the testimony of the Department social worker, Jeannette Morrison, that the Department's efforts to advise the mother of the trial date by publication were reasonable. Also, the court finds that a diligent search was made to locate her. The court further finds that there are no other pending proceedings effecting the custody of these two children. The court, having reviewed the verified petition, the social studies, and the various documents entered into evidence and having heard the testimony of Jeanette Morrison, makes the following factual findings and reasonable CT Page 2352 inferences supported by those findings:
The mother, Selina M., is now twenty-five years old and had a troubled and ongoing history of drug and alcohol addiction. She did not complete high school and began using drugs and alcohol while in school. She has never been married and at age fifteen gave birth to twins, one of whom died within three months. The surviving twin, Shana, was placed with the Department and her rights to this child were terminated. She continued her alcohol and cocaine addicted lifestyle and on May 14, 1990, gave birth to her third child, Jayron B. She lived with various relatives and friends and in 1992, the Department began to provide services to assist her in caring for Jayron. On June 30, 1995, she was arrested for a drug charge and risk of injury to a minor, as she was using drugs in Jayron's presence. Jayron was then placed in foster care. He was returned to his mother for a short period in the fall of 1995, when she was in a drug rehabilitation program. When she was discharged from the program for non-compliance, Jayron was returned to the same foster mother with whom he now resides.
On February 24, 1996, Selina M. gave birth to her youngest child, JaBraun. She admitted to using cocaine on the day before his birth and she tested positive for drugs while giving birth. JaBraun was immediately placed in the foster home in which he presently resides.
The months and years since the placement of the children have been characterized by Selina's fitful and marginal attendance at various drug treatment programs, from which without exception she has been discharged for failing to attend and participate. Selina has also been incarcerated at various times since her children were placed. She has made attempts to visit her children, but has only done so rarely. She visited her youngest child just once, in May of 1996, and never again since that time. She visited with Jayron a total of five times since his placement. The last contact she had with the children was during the psychological evaluation ordered by the court and conducted on August 14, 1997. Prior to the evaluation date, she had not visited with either child in over a year. Since September of 1997, she has not been in contact with the Department and her whereabouts are presently unknown. She has not called to inquire about the children's welfare, nor sent gifts or cards or provided any financial support. Prior to her last visit, she was unavailable for most of the visits that were scheduled on her behalf, including one at CT Page 2353 York Correctional Center in 1996.
Many services were offered to Selina. Prior to the removal of Jayron from her care, she received referrals for individual counseling, in-patient and out-patient substance abuse treatment and evaluation, self help groups, housing services and a parent aide. The Women's Center provided her with parenting skills training, individual counseling and NA support groups.
After her oldest son was committed, she received visitation, visitation assistance and drug treatment referrals, none of which were able to assist her in remaining free of illegal drugs and to abstain from their use. No expectations were set for her as she did not attend any court hearings. A service agreement was entered into in January of 1996, the terms of which she did not honor. As of the filing of the petitions for the termination of her parental rights to her children on December 11, 1996, Selina M. had not been able to reorder her life to be able to care for her children, even minimally
At the time Jayron came into foster care, he exhibited only few consequences of the chaotic life he had led while in the care of his mother. Now, he is well adjusted and functioning at age appropriate levels. He was recently named Student of the Month at his school. JaBraun, at twenty-three months, has developed well and is a happy active child. The children visit with each other and their older sister regularly. JaBraun has never known his mother. Dr. Freedman, the court- appointed psychologist, found that his foster mother was his psychological parent. He also noted in 1997. that for Jayron:
 "the foster mother and mother both occupied important roles in his thoughts and feelings. He is strongly attached to the foster mother; however, he regards her in some ways a substitute caretaker and awaited the time he could return to his mother."
He noted that the children were "secure and attached in their foster homes." At that time, Selina M. was making some progress with her drug treatment. He stated that "if the mother relapsed and left treatment, termination of parental rights should be pursued quickly for the boys' sake."
ADJUDICATION
CT Page 2354
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of December 11, 1996, these children have been abandoned by Selina M., their biological mother, as she had not maintained a reasonable degree of interest, concern or responsibility for them. "A parent must maintain a reasonable degree of interest in the welfare of his or her child. `Maintain' implies a continuing reasonable degree of concern." In ReMichael M., 29 Conn. App. 112, 614 A.2d 832 (1992) quotingIn Re Rayna M., 3 Conn. App. 23, 37-38, 534 A.2d 897
(1987). Her, contact with them since their placement in foster care has been only minimal. She has not sent gifts, cards or any financial support and has only rarely called to inquire about their welfare. The court further finds such circumstances had existed for an extended period of time in excess of one year prior to the date of the filing of the petitions for termination of parental rights.
REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by § 17a-112(e):
1) Appropriate and timely services were provided by the Department of Children and Families, including a parent aide, counseling, drug treatment referrals transportation assistance, and visitation coordination. The services offered were extensive.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as fair as possible. Jayron was returned to his mother's care briefly in 1995 with the expectation that the child could remain with his mother, only to have this plan fail. Unfortunately, the mother was unable to begin to take the steps necessary to rehabilitate herself from her drug addiction.
3) The Department set reasonable and realistic goals embodied in a service agreement in order to reunify the family, which the mother was unable to fulfill
4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have CT Page 2355 developed significant emotional ties. Only Jayron knows his mother and while she is important in his life, she has abandoned him and he cannot wait for permanency any longer. Jayron also cares for his foster mother. JaBraun only knows the foster mother as his mother and has no connection to his biological mother.
5) Finding regarding the age of the children. Jayron is seven years old and will be eight on May of 1998. JaBraun will be two on February 24, 1998.
6) Finding regarding efforts of the parent to adjust her circumstances, conduct or conditions to make it in the best interests of the children to return them to her home in the foreseeable future and (A) the extent to which the parent has maintained contact with the children as part of an effort to reunite the children with the parent, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. Selina M. has made only minimal efforts to maintain contact with her children in an effort to reunite with them. Her visits have been sporadic. Since August 1997, there have been no visits and prior to that, there had been no visits in over one year. Selina has been unable, as previously found, to adjust her conduct to make a return of the children to her feasible.
7) Finding regarding the prevention of the parent from having a meaningful relationship etc. No inappropriate conduct is noted. The Department has taken many steps to encourage Selina to have a meaningful relationship with her children.
DISPOSITION
Jayron has been in foster care for almost three years. JaBraun has been in foster care all his life. They both need the stability and consistency that are provided by their loving relationship with their respective foster mothers. Based upon the foregoing findings, the court determines that it is in the children's best interests that a termination of parental rights enter with respect to their mother, Selina M. and, accordingly, a termination of her parental rights is ordered. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. If either foster mother continues to be willing to adopt the child in her care, it is the court's direction that she receive first consideration. A permanency plan CT Page 2356 for both children shall be submitted within ninety days. A review plan for them shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session